**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| CHARLESTON COUNTY SCHOOL DISTRICT, | ) ) ) | Civil Action No:_____2:26-cv-2169-RMG_____ |
| Petitioner/Appellant, | ) ) | |
| vs. | ) ) | **COMPLAINT** **(Non-Jury; Administrative Appeal)** |
| Jolene Lovett, on behalf of minor child, H.L., | ) ) ) ) | |
| Respondent/Appellee. | ) ) | |

COMES NOW Petitioner/Appellant Charleston County School District bringing this civil action against Respondent/Appellee Jolene Lovett, on behalf of her minor child, H.L., showing this Honorable Court as follows:

1.      This is a civil action in the nature of an appeal, which is authorized by the Individuals with Disabilities Education Act, as amended ("IDEA"), 20 U.S.C. §§ 1400, et seq.

2.      Pursuant to 20 U.S.C.A. § 1415(i)(2)(A), (3)(A), and 34 C.F.R. § 300.516(a), this Court has jurisdiction of this proceeding without regard to the amount in controversy.

3.      Petitioner/Appellant Charleston County School District ("CCSD") is a political subdivision of the state of South Carolina that receives federal funds from the United States Department of Education to implement the IDEA. CCSD is located in, and operates schools in, Charleston County, South Carolina, and is within the venue of this Court.

4.      Respondent/Appellee Jolene Lovett ("Parent") is the parent of H.L. and resides in Charleston County, South Carolina. At all times relevant to this matter, H.L. has attended CCSD schools. H.L. is a student with a disability under the IDEA and is subject to the provisions of the

1

IDEA. CCSD is designating the Student in this complaint by her initials pursuant to Rule 5.2(a)(3) of the Federal Rules of Civil Procedure.

5.     CCSD brings this action as an aggrieved party pursuant to 20 U.S.C.A. § 1415(i)(2)(A) and (3)(A), as well as 34 C.F.R. § 300.514 and § 300.516, to challenge the final decision of the State Review Officer appointed by the S.C. Department of Education to review the decision entered by the Local Hearing Officer following a three-day hearing on Parent's Due Process Complaint.

6.     All appropriate administrative remedies have been exhausted with respect to the adverse decision challenged herein by CCSD. South Carolina has a two-tiered, independent, administrative review process for claims brought pursuant to the IDEA and both the Local Hearing Officer and State Review Officer have rendered final decisions in this matter.

## FACTUAL ALLEGATIONS

7.     H.L., who is eligible for special education and related services under the developmental delay category, began attending kindergarten at Ashley River Creative Arts ("ARCA") for the 2025-2026 school year. School started that year on August 12, 2025.

8.     At ARCA, pursuant to an Individualized Education Program ("IEP") developed in May 2025 at her previous school, H.L. has been in a resource model, being placed in a general education classroom and receiving her special education and related services, initially 750 min/week and later increasing to 900 min/week, in the resource (special education) classroom.

9.     From the very start of the year, H.L. exhibited extreme behaviors and adamantly resisted any academic task, often disrupting the remainder of the classroom. A picture soon emerged of a student whose lack of communication and pre-academic skills left her significantly unprepared for the kindergarten setting and curriculum, even as modified for her.

10.     Due to her lack of pre-academic skills and her communication deficiencies, H.L.'s frustrations and dysregulated behaviors escalated. The educational professionals comprising H.L.'s IEP team initiated a reevaluation and performed a Functional Behavior Analysis ("FBA") within weeks of school starting.

11.     At an October 15, 2025, IEP meeting ("10/15/25 Meeting"), the team conducted the annual IEP review, reviewed the Reevaluation Report and FBA, and created a comprehensive Behavioral Intervention Plan ("BIP") that was immediately and consistently implemented.

12.     The team also revised H.L.'s IEP. Specifically, H.L.'s goals were modified, accommodations were added, and special education services minutes were increased in the areas of written expression, social emotional and communication, increasing service minutes from 750 min./week to 900 min./week.

13.     Despite the implementation of the BIP's proactive and preventative strategies, as well as the implementation of the numerous accommodations in the IEP developed on October 15, 2025 ("10/15/25 IEP"), all specifically tailored to assist H.L. access the curriculum, H.L. exhibited little to no progress or improvement in her dysregulated behaviors.

14.     A Special Review meeting was scheduled initially for December 16, 2025, during which H.L.'s educational placement and progress were to be discussed. Parent testified at the due process hearing that she requested that the December 16, 2025, meeting be rescheduled.

15.     The Special Review was ultimately rescheduled to take place on January 27, 2026 ("1/27/26 Meeting"). That was the date requested by Parent. The team was unable to complete the Special Review on that day and it was reconvened, and completed, on February 3, 2026 ("2/3/26 Meeting") (the two meetings will collectively be referred to as the "Special Review").

16.     At the conclusion of the Special Review, consensus could not be reached as to placement because Parent disagreed with the remainder of the team's proposal that H.L.'s educational placement be changed to the Intensive Developmental Support ("IDS") classroom. As such, ARCA's Vice Principal, who was acting as the LEA for the Special Review, made the decision that H.L.'s placement was being changed to the IDS classroom.

17.     The IDS classroom is a self-contained classroom and a more restrictive environment than H.L.'s placement at ARCA. The IDS classroom is structured to provide the intensive support that H.L. needs to develop her communication and pre-academic skills so that she may eventually progress to the point that she can move to a less restrictive placement.

18.     Although Parent's Due Process Complaint ("DPC") raises four distinct issues, the crux of this matter is Parent's disagreement with the change in placement proposed by the team at the conclusion of the Special Review meeting.

## PROCEDURAL HISTORY

19.     Parent filed a Due Process Complaint ("DPC") on February 3, 2026, which listed eight "violations" alleged to have been committed by CCSD.

20.     Monica R. Bohlen was appointed as the Local Hearing Officer ("LHO").

21.     On March 9, 2026, the LHO provided the parties with an order titled: "Notice of Pre-Hearing Conference." This order noted that a pre-hearing conference call was scheduled for April 3, 2026, and that one of the purposes of the conference was to "handle such matters as…[a] determination and clarification of the issues presented."

22.     During the call on April 3, 2026, discussion concerning the identification of the discrete issues raised by the DPC was held. Parent participated in this discussion and in identifying the four issues presented by her DPC.

4

23. Following the call, the LHO issued a Pre-Hearing Conference Order which, in part, identified the four issues raised by the DPC. Those issues are as follows:

1) Whether the placement proposed by the IEP team on or about February 3, 2026, is the appropriate placement for Student.

2) Whether the District failed to provide Student a FAPE[1] during the 2025-2026 school year, by failing to implement the Student's October 15, 2025 IEP.

3) Whether the District failed to provide Student a FAPE during the 2025-2026 school year, by failing to implement the Student's BIP with fidelity.

4) Whether the District failed to provide Student a FAPE during the 2025-2026 school year by denying Parent meaningful participation at the January 27, 2026 and February 3, 2026 special review IEP team meetings.

24. Pursuant to the IDEA, 34 C.F.R. § 300.511(d), the subject matter of a due process hearing is limited to those issues that were raised in the due process complaint by the party requesting the hearing.

25. Parent did not, at any time, express any disagreement with the identification of the issues set forth in her DPC.

26. A due process administrative hearing under the IDEA was held before the LHO from April 13-15, 2026. Parent presented her own testimony but did not call any other witnesses. CCSD presented six witnesses, including H.L.'s general education teacher and special education teacher, the school's Vice Principal and school psychologist, CCSD's Director of the Department of Exceptional Children, and a CCSD Special Education Coordinator for Elementary Schools.

27. During the hearing, the LHO excluded testimony and evidence that was not relevant to the four issues identified as being set forth in the DPC. Additionally, the LHO sustained CCSD's

---

[1] The IDEA mandates that all handicapped children receive a free and appropriate education ("FAPE").

objection to any evidence or testimony concerning the sufficiency of the 10/15/25 IEP, as opposed to the implementation of that IEP. On the record, the LHO explained that distinction to Parent. At no time did Parent indicate that she was challenging the sufficiency of the 10/15/25 IEP.

28.    The LHO's Order, which resolved all four issues in favor of CCSD, was received on April 30, 2026.

29.    Parent sought review of the LHO's Order by a State-Level Review Officer ("SRO") appointed by the South Carolina Department of Education. Both parties submitted appellate briefs, and the SRO took no new evidence. The SRO's Order was issued on May 29, 2026.

30.    The SRO's Order upheld the LHO's determination, resolving the four issues identified above in favor of CCSD. However, the SRO's Order went a step further, finding *sua sponte* that the 10/15/25 IEP was inadequate and failed to provide FAPE. The SRO concluded that the 10/15/25 IEP failed to provide any additional services to H.L., despite a documented need. It appears that the SRO based this conclusion on her opinion that, at the 10/15/25 Meeting, the IEP team should have either added a 1:1 adult aide as an accommodation/service or changed H.L.'s placement at that time to the IDS classroom. Curiously, the SRO also found: "Parent did not meet her burden of proving that a 1:1 aide would enable the Student to make sufficient academic gains in the general education setting."

31.    Where an issue is not raised in the due process complaint, is not identified as an issue during the pre-hearing conference, nor mentioned in the pre-hearing order, the issue cannot not be raised *sua sponte* by the hearing officer following the due process hearing. M.O. v. District of Columbia, 20 F. Supp. 3d 31, 39 (D.D.C. 2013) (quoting Dist. of Columbia v. Pearson, 923 F. Supp. 2d 82, 87–88 (D.D.C. 2013)) (alterations adopted); see also Bd. of Ed. of the Green Local

Sch. Dist. v. Redovian, 18 IDELR 1092, 1094 (E.D. Ohio 1992)[2] (the hearing officer erred when he "inject[ed]" an issue that was "never raised" in the student's request for a hearing because "the school district had no notice" of the issue and no "chance to defend itself against it")).

32.     The SRO's Order, based on the *sua sponte* finding that the 10/15/25 IEP was inadequate, awarded compensatory education as follows: "Compensatory education shall be calculated by multiplying the number of days the Student attended school between October 15, 2025 and February 3, 2026 by 110 minutes – the number of reading, writing, and math resource minutes the Student would have received per day."

33.     This award of compensatory education services is improper both because it is based on the SRO's procedurally and factually improper finding that the 10/15/25 IEP was inadequate and because it is not reasonably calculated to provide the services H.L. needs to progress.

34.     The SRO's Order further requires CCSD to commence the compensatory education services within 20 days of the date of the Order.

## CAUSE OF ACTION
### (Appeal of SRO's Order)

35.     CCSD seeks an order from this Court vacating the SRO's *sua sponte* finding that the 10/15/25 IEP was insufficient and resulted in a denial of FAPE and its award of compensatory education services. The findings of fact in the Order are not supported by the preponderance of the evidence and the conclusions of law are in conflict with applicable law. Additionally, the SRO did not give due weight to the findings of the LHO as required by the IDEA. Without limiting the foregoing, the portion of the SRO's Order finding that the 10/15/25 IEP was insufficient and awarding compensatory education services should be vacated for the following reasons:

---

[2] A copy of this opinion is attached as **Exhibit 1.**

a.  The SRO improperly injected the issue of the sufficiency of the 10/15/25 IEP into these proceedings, despite the IDEA's mandate that due process hearings be limited in scope to that which is alleged in a due process complaint;

b.  CCSD had no notice that the SRO was going to issue a ruling on the sufficiency of the 10/15/25 IEP and was not provided the opportunity to be heard on that issue;

c.  The SRO's award of compensatory education services is without legal or factual support;

d.  The SRO's calculation of compensatory education services is without legal or factual support; and

e.  Even if it were an issue properly before the SRO, the SRO's *sua sponte* determination that the 10/15/25 IEP was insufficient is not supported by the record.

## **PRAYER FOR RELIEF**

36.  CCSD respectfully prays the following:

a.  That this Court take jurisdiction of this matter;

b.  That, pursuant to the IDEA and applicable case law, this Court review the evidence contained in the administrative record to make a decision based on the preponderance of the evidence;

c.  That this Court issue an order:

   i.  Vacating the SRO's Order's finding that the 10/15/25 IEP was insufficient, resulting in a denial of FAPE, and its award of compensatory education;

   ii.  Affirming the SRO's Order's determinations in favor of CCSD on the four issues raised by the DPC;

   iii.  Declaring CCSD the prevailing party on all claims; and

iv.  Granting CCSD any further relief to which it is justly entitled.


Respectfully Submitted,

SAXTON & STUMP

/s/ Elizabeth J. Palmer
Elizabeth J. Palmer (Fed ID: 9716)
151 Meeting Street, Suite 400
Charleston, SC 29401
(843) 414-5080
ep@saxtonstump.com

ATTORNEYS FOR PETITIONER/APPELLANT

Charleston, South Carolina
June 3, 2026